**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JAMES E. BROWN, JR.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. MJM-25-2633** |
| **MAYOR AND CITY COUNCIL OF BALTIMORE,** | * | |
| **Defendant.** | * | |

* * * * * * * * * *

## MEMORANDUM OPINION

James E. Brown Jr. ("Plaintiff") brings this civil action against the Mayor and City Council of Baltimore ("Defendant") for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). ECF No. 10. The matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 11. The motion is fully briefed, and no hearing is necessary to resolve it. Loc. R. 105.6 (D. Md. 2025). For reasons stated below, the motion shall be granted, and the Amended Complaint shall be dismissed without prejudice.[1]

## I. BACKGROUND

Plaintiff, an African American male, ECF No. 10 ("Am. Compl.") at 3, was previously employed as an Operations Officer I at the Office of Home Energy Programs within the Baltimore

[1] Also pending are Defendant's motion to dismiss Plaintiff's original complaint (ECF No. 8) and Plaintiff's motion for leave to file an Amended Complaint (ECF No. 10). As discussed below, Defendant's first motion to dismiss is denied as moot, and Plaintiff's motion for leave is granted.

Mayor's Office of Children and Family Success, Community Action Partnership Division, ECF No. 10-1 at 2. Around August or September 2023, Plaintiff reported that Director Angela Whitaker mocked Domonique Graham's, a male coworker, sexual orientation by referring to him as someone's "daughter." Am. Compl. at 3. Whitaker also suggested that her son would assault Graham at a football game. *Id.* Plaintiff reported Whitaker's comments to Human Resources ("HR"), Executive Director Debra Brooks, and the Office of Civil Rights, and served as a witness in a grievance proceeding. *Id.* In March 2024, Plaintiff was terminated. *Id.* After an appeal, Defendant reinstated Plaintiff around May or June 2024. *Id.* Shortly thereafter, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.*

During a July 17, 2024, staff meeting, Whitaker stated in front of staff that she would "go sit in the back like a nigger." *Id.*; ECF No. 10-1 at 2. Plaintiff reported Whitaker's statement to HR and agency leadership. *Id.*[2] In October 2024, Plaintiff was terminated again. *Id.* The City of Baltimore's Manager of Policy and Compliance, Larissa Parrish, issued an Investigation Summary on December 5, 2024. *See* ECF No. 10-1 at 2. Parrish explained that Whitaker's racially derogatory statement was "unbecoming" of a City employee, but it was not determined that a violation of the City's harassment and hostile work environment policy occurred. *Id.* In June or July 2025, an EEOC Investigator informed Plaintiff that his case had been referred to the U.S. Department of Justice after Defendant "submitted unrequested confidential medical information along with Plaintiffs' personnel file." ECF No. 10 at 3.

Plaintiff initiated the instant civil action on August 8, 2025. ECF No. 1. Defendant was served process on February 25, 2026, ECF No. 7, filed a motion to dismiss Plaintiff's initial

[2] Plaintiff attaches as Exhibit E to his opposition brief a copy of an email he sent Baltimore City officials about Whitaker's statement. ECF No. 13-5. According to the email, a co-worker told Plaintiff that Whitaker used the term "negro" during the staff meeting, and Whitaker later admitted using this term—not the n-word. *See id.*

Complaint on March 18, 2026, ECF No. 8. Two days later, Plaintiff filed a Combined Motion to Amend Complaint and Response in Opposition to Defendant's Motion to Dismiss. ECF No. 10. In his Amended Complaint, Plaintiff alleges race discrimination, retaliation, and hostile work environment in violation of Title VII, and unlawful disclosure of confidential medical information in violation of the ADA. *Id.* at 2–4. On April 2, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 11. In it, Defendant concedes Plaintiff's ability to file an amended complaint and that its first motion to dismiss is moot. ECF No. 11-1 at 2 n.3; *see also* Fed. R. Civ. P. 15(a)(1)(B) (permitting plaintiff to amend his pleading "once as a matter of course" within 21 days after service of a Rule 12(b) motion). Plaintiff filed a response in opposition to Defendant's new motion to dismiss, ECF No. 13, and Defendant filed a reply, ECF No. 14.

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a civil complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To survive such a motion, a plaintiff must plead facts sufficient to "raise a right to relief above the speculative level" and "nudge[] [the] claims across the line from conceivable to plausible." *Aziz v. Alcolac,* Inc., 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Although courts generally accept the complaint's factual allegations as true, they need not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action" supported by conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6) motion, courts typically limit their review to the complaint and any documents "attached or incorporated into the complaint." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d

159, 166 (4th Cir. 2016) (permitting consideration of documents attached to or explicitly incorporated in the complaint). In limited circumstances, however, a court may consider documents outside the complaint without converting the motion into one for summary judgment. *Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 415 (D. Md. 2024) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). Specifically, a court may consider documents submitted by the movant if they are integral to the complaint and their authenticity is not disputed. *Goines*, 822 F.3d at 166.

"[*P*]*ro se* filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (second alteration in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). "[L]iberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff,' but only to determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).

## III. DISCUSSION

### A. Count I: Title VII Race Discrimination

In Count I of the Amended Complaint, Plaintiff asserts a claim of race discrimination in violation of Title VII. Count I fails because Plaintiff does not allege facts to suggest any link between his discharge and his race.

Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. In an employment discrimination case, the plaintiff bears the burden of proving his claims either through direct or indirect evidence of discriminatory animus under "ordinary principles of proof[,]" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997), or through the burden-shifting framework articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). *See Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021). "Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Bandy v. City of Salem*, 59 F. 4th 705, 711 (4th Cir. 2023) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003)).

Under the *McDonell Douglas* framework, the burden is first on the plaintiff to establish a *prima facie* case of discrimination. *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 600 (D. Md. 2018). Upon such a showing, the burden shifts to the employer to assert a "legitimate, nondiscriminatory reason" for the allegedly discriminatory conduct. *Adams v. Trs. of the Univ. of N.C.–Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011). If the employer makes that showing, the burden shifts back to the plaintiff to demonstrate that the employer's purported reasons are a "pretext for discrimination" *Id.* at 558–59. To establish a *prima facie* claim for discriminatory termination,

> [a] plaintiff must then present facts demonstrating: (1) the plaintiff[']s membership in a protected class, (2) that the plaintiff was terminated, (3) that at the time of the termination, the plaintiff was performing at a level that met the employer's legitimate expectations, and (4) that the position was filled by a similarly qualified applicant from outside the protected class.

*Chang Lim*, 310 F. Supp. 3d. at 601 (citing *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)). Although a plaintiff need not plead facts establishing a *prima facie* case to survive a motion to dismiss, he must allege sufficient factual matter to permit a reasonable inference that the adverse actions were taken because of a protected characteristic. *See Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017).

Defendant argues that the Amended Complaint fails to state a plausible discriminatory termination claim. *See* ECF No. 11-1 at 5–6. More specifically, Defendant contends that "[n]owhere in the Amended Complaint does Plaintiff assert facts which suggest that similarly situated employees outside of his race were treated more favorably. Likewise, Plaintiff fails to assert facts that link any action by Defendant to discriminatory animus directed toward him." *Id.* at 6. Plaintiff responds that he states a plausible claim for race discrimination because the use of a racial slur is "severe and sufficient to support a claim." ECF No. 13 at 3.

Based on the facts alleged in the Amended Complaint, Defendant is correct that Count I must be dismissed for failure to state a claim. The Amended Complaint does not describe any discriminatory conduct or statements directed toward Plaintiff "that bear directly on" his termination, *Bandy*, 59 F. 4th at 711, or that the decisionmakers responsible for his termination acted with discriminatory animus. For example, Plaintiff does not allege that Director Whitaker—the only City official alleged to have made discriminatory comments—had any role in or influence over Defendant's decision to terminate his employment. Nor does the Amended Complaint present factual allegations suggesting that similarly situated employees outside Plaintiff's race were treated more favorably or that Plaintiff was replaced by someone outside his race. *See, e.g.*, *Chang Lim*, 310 F. Supp. 3d. at 602 (dismissing discriminatory termination claim because Plaintiff did not allege he was replaced from someone outside his protected class). Absent factual allegations

linking Plaintiff's discharge to his race, Count I does not state a plausible claim for discriminatory termination and must be dismissed.

**B. Count II: Title VII Retaliation**

In Count II of his Amended Complaint, Plaintiff alleges that Defendant retaliated against him for engaging in protected activity, in violation of Title VII. Am. Compl. at 4. As explained below, like Count I, Count II is subject to dismissal for insufficient pleading.

Title VII forbids employers from retaliating against an employee for reporting workplace discrimination. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015); 42 U.S.C. § 2000e–3(a). To state a claim of retaliation, a plaintiff must allege "(1) that [he] engaged in a protected activity, (2) that [his] employer took an adverse action against [him], and (3) that there was a causal link between the two events." *Laurent-Workman v. Wormuth*, 54 F. 4th 201, 212 (4th Cir. 2022) (citation omitted). A plaintiff can plead a causal connection in two ways: (1) by alleging facts that suggest the adverse action occurred because of the protected activity; or (2) by alleging sufficient temporal proximity between the protected activity and the adverse action. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 115, 123 (4th Cir. 2021). "'[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action' may establish causation only if it is 'very close.'" *Laurent-Workman*, 54 F.4th at 219 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Although there is no "bright-line rule" for how close the temporal proximity must be to support an inference of causation, *Roberts*, 998 F.3d at 126–27, a two-month temporal gap has been found to be "sufficiently long so as to weaken significantly the inference of causation between the two events[,]" *King*, 328 F.3d at 151 n.5.

Plaintiff's first alleged protected activity does not support a plausible retaliation claim. Plaintiff alleges that, in August or September 2023, he reported to an HR director, an executive director, and the Office of Civil Rights that an agency director mocked a coworker's sexual

orientation and threatened bodily harm, and he served as a witness in support of a grievance. Am. Compl. at 3. According to the Amended Complaint, Plaintiff was not terminated until approximately six months later, in March 2024. *Id.* The Amended Complaint contains no factual allegations connecting Plaintiff's first protected activity to his termination, and a six-month gap, standing alone, is too large to support an inference of causation through temporal proximity. *See Wilson v. Nat'l R.R. Passenger Corp.*, Civ. No. 22-02884-JRR, 2025 WL 885836, at *13 (D. Md. Mar. 20, 2025), *aff'd*, No. 25-1336, 2026 WL 1694986 (4th Cir. June 11, 2026) (holding that a seven-month gap between protected activity and adverse action did not create a triable issue on causation); *Burnett v. BJ's Wholesale Club*, 722 F. Supp. 3d 566, 576 (D. Md. 2024), *aff'd*, No. 24-1228, 2024 WL 3042902, at *576 (4th Cir. June 18, 2024), *motion for relief from judgment denied*, Civ. No. JKB-22-02840, 2024 WL 3890781 (D. Md. Aug. 21, 2024) (holding that a temporal gap of "four to five months" was "too long to support an inference of causation"); *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 673 (D. Md. 2013) (finding that a causal connection was "not plausible" where it depended solely on an allegation of "temporal proximity of five months—a period of time that is not 'very close[]'").

Plaintiff's second alleged protected activity suffers from a similar defect. Plaintiff alleges that an agency director, Whitaker, used a racial slur during a staff meeting on July 17, 2024, stating she would "go sit in the back like a nigger." Am. Compl. at 3. Plaintiff further alleges that he was terminated "shortly after reporting the racial statement." *Id.* Plaintiff was terminated on October 3, 2024. Defendant argues that the Amended Complaint fails to allege a plausible causal connection between the protected activity and Plaintiff's termination, suggesting that too much time passed for Plaintiff to rely on temporal proximity. *See* ECF No. 11-1 at 7–8. The relevant event for purposes of temporal proximity is not when the racial slur was used but when Defendant

was aware that Plaintiff engaged in protected activity. Yet the Amended Complaint does not allege when Plaintiff reported Whitaker's statement to HR and agency leadership. While Plaintiff alleges that he was terminated "shortly after" reporting Whitaker's statement, Am. Compl. at 3, that vague and conclusory characterization does not permit the Court to determine whether the protected activity and adverse action occurred sufficiently close in time to support a reasonable inference of causation.[3] *See Laurent-Workman*, 54 F.4th at 209. Nor does the Amended Complaint allege any other facts linking Plaintiff's report to his termination. Accordingly, Plaintiff has failed to allege a plausible causal connection between any protected activity and his subsequent termination, and Count II must be dismissed.

### C. Count III: Hostile Work Environment

In Count III of his Amended Complaint, Plaintiff alleges that he was subjected to a hostile work environment on account of his race, in violation of Title VII. Am. Compl. at 4. Like Counts I and II, Plaintiff's hostile work environment claim must be dismissed.

To state claim under Title VII for hostile work environment based on race, a plaintiff must allege that he was subjected to "(1) unwelcome conduct; (2) that is based on the [his race]; (3) which is sufficiently severe or pervasive to alter [his] conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of*

---

[3] Plaintiff attaches as an exhibit to his opposition brief copy of an email he sent to Executive Director Debra Brooks and other City officials on July 18, 2024, reporting the comment Whitaker allegedly made during the staff meeting. ECF No. 13-5. Notably, the email reports that Whitaker admitted using the term "negro" during the staff meeting, *see id.*—not the n-word alleged in the Amended Complaint. In any case, an exhibit attached to an opposition brief cannot be considered in assessing the factual sufficiency of a complaint unless it is integral to the complaint and its authenticity is not in dispute. *See Goines*, 822 F.3d at 166. Even if the contents of the email could be considered in support of the retaliation claim in Count II, they may not, by themselves, support a reasonable inference of causation between the protected activity reflected in the email and Plaintiff's termination approximately three months later. *See Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x. 229, 233 (4th Cir. 2006) (finding three- to four-month lapse between protected activities and termination "too long to establish a causal connection by temporal proximity alone").

*Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (citation and internal quotation marks omitted). The "severe or pervasive" requirement has both subjective and objective components. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). "Whether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). A plaintiff "must clear a high bar in order to satisfy the [objective] severe or pervasive test." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019) (quoting *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)) (alteration in *Perkins*). A court considers "'all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Sunbelt Rentals*, 521 F.3d at 315–16). "The standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Id.* (cleaned up).

Viable hostile work environment claims "often involve repeated conduct[;]" "'a single act of harassment may not be actionable on its own.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). "[M]ere utterance of an epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (cleaned up). Importantly, however, the Fourth Circuit is clear that even an isolated incident of harassment "can 'amount to discriminatory changes in the terms and conditions of employment,' if that incident is 'extremely serious.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Plaintiff's hostile-work-environment allegations fail to clear the high bar of the objective "severe or pervasive" test. *Perkins*, 936 F.3d at 208 (citation omitted). Plaintiff alleges that Whitaker, a Director at Plaintiff's former agency, used a racial slur during a staff meeting, stating that she would "go sit in the back like a nigger." Am. Compl. at 3. The Amended Complaint does not allege that Whitaker directed the remark at Plaintiff, repeatedly used racial epithets, threatened Plaintiff, humiliated Plaintiff, or otherwise engaged in any other racially discriminatory conduct with any frequency or severity. Nor does Plaintiff allege facts showing that the comment interfered with his work performance or otherwise altered the conditions of his employment. In fact, the Amended Complaint provides virtually no context surrounding the statement beyond its occurrence during a staff meeting.[4]

The allegations in the Amended Complaint stand in marked contrast to those presented in *Boyer-Liberto*, 786 F.3d 264. There, the Fourth Circuit found that a supervisor's use of the epithet "porch monkey," directed at the subordinate employee plaintiff, who was black, was "about as odious as" the n-word, and sufficiently severe to support a hostile work environment claim. *Boyer-Liberto*, 786 F.3d at 279–80. In reaching that conclusion, the court observed that "perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in

[4] Additional context is provided in an email Plaintiff authored on July 18, 2024, which he attached as an exhibit to his opposition brief. ECF No. 13-5. But this exhibit is not attached to the Amended Complaint, it recites facts not contained in the Amended Complaint, and it does not appear to be integral to Plaintiff's hostile-work-environment claim. Therefore, the email cannot be considered in assessing the sufficiency of Count III. *See Goines*, 822 F.3d at 166. The facts relayed in the email indicate that Whitaker used the term "negro"—not the n-word—but suggest that the term was used to refer to a group of employees sitting in the back of the room, including Plaintiff. Importantly, however, the email suggests that the comment was not directed at Plaintiff, and Plaintiff did not hear Whitaker make the comment at all; instead, the comment was related to Plaintiff by another employee after the meeting. According to the email, Plaintiff later confronted Whitaker about the "negro" comment, and she admitted making the comment. In sum, even if the Court were to consider the facts outlined in the email exhibit as if they were pleaded in the Amended Complaint, it is unclear whether these facts, by themselves, clear the "high bar" of the objective "severe or pervasive" test. *Perkins*, 936 F.3d at 208 (citation omitted).

the presence of his subordinates.'" *Id.* at 280 (collecting cases). The court's analysis, however, turned on the circumstances and context—not merely the use of a racial epithet—including that (1) the remarks were directed at the plaintiff, (2) they came from the plaintiff's supervisor, and (3) were accompanied by threats to plaintiff's employment. *Id.* at 279–81; *cf. Bazemore v. Best Buy*, 957 F.3d 195, 198 (4th Cir. 2020) (affirming dismissal of a hostile work environment claim where a coworker's "tasteless" joke, which involved use of the n-word and was directed a black colleague, because the offensive remark could not be imputed to the employer); *Alexander v. Bloomingdale's, Inc.*, Civ. No. PWG-17-3283, 2019 WL 2162286, at *10 (D. Md. May 17, 2019), *aff'd*, 780 F. App'x 48 (4th Cir. 2019) (finding that a co-worker's isolated use of the insult "stupid white bitch" did not establish a hostile work environment on its own).

The Court does not minimize the offensiveness of Whitaker's remark as alleged in the Amended Complaint. The alleged comment appears to allude to a period in this country's history when racial segregation and discrimination were sanctioned by law, and the epithet at issue carries a uniquely odious legacy. Indeed, the City's own investigation concluded that the comment was "unbecoming" and "not appropriate in a work setting." ECF No. 10-1 at 2. But Title VII is not a "general civility code" for the workplace. *Perkins*, 936 F.3d at 208. The question is not whether the remark was uncivil or even offensive, but whether Plaintiff has alleged facts to suggest that it was sufficiently severe to alter the conditions of his employment. The Amended Complaint falls short of this standard. Without additional facts about the context of the statement, whether it was directed at Plaintiff, whether Plaintiff heard it, whether it was accompanied by other discriminatory conduct, or how it affected Plaintiff's working conditions, the Court cannot reasonably infer that this isolated comment crossed the threshold established by Title VII. Accordingly, Count III must be dismissed.

**D. Count IV: ADA**

In Count IV of the Amended Complaint, Plaintiff alleges that "Defendant violated the ADA by disclosing confidential medical information." Am. Compl. at 4. In support, Plaintiff contends that, "[i]n June or July 2025, [an] EEOC Investigator . . . informed [him] that his case had been referred to the Department of Justice after Defendant submitted unrequested confidential medical information along with Plaintiff's personnel file." *Id.* at 3. Plaintiff offers no further facts to support his claim.[5] Count IV must be dismissed for insufficient pleading.

"The ADA prohibits an employer from disclosing confidential medical information about an ex-employee . . . ." *McPherson v. O'Reilly Auto., Inc.*, 491 F.3d 726, 732 (8th Cir. 2007); *see also* 42 U.S.C. § 12112(d). To state a claim under the confidentiality provision of 42 U.S.C. § 12112(d), a plaintiff must allege sufficient facts to establish that:

> (1) the employer collected medical information from Plaintiff through "voluntary medical examinations [as] part of an employee health program" or "inquiries into the ability of an employee to perform job-related functions"; and (2) the employer did not treat such medical information as confidential or used such information not in accordance with 42 U.S.C. § 12111 *et seq.* 42 U.S.C. § 12112(d).

*Dillard v. Am. Ass'n of State Highway & Transportation Offs.*, Civ. No. TJS-24-1154, 2024 WL 4544555, at *3 (D. Md. Oct. 22, 2024) (citing *Rohan v. Networks Presentation, LLC*, 174 F. Supp. 2d 806, 814 (D. Md. 2001)).

The Amended Complaint contains insufficient factual allegations to state a claim under the ADA's confidentiality provisions. Plaintiff alleges only that an EEOC investigator informed him Defendant had submitted "unrequested confidential medical information" along with his personnel

[5] The Court again notes that, in evaluating the propriety of dismissal, it generally does not consider evidence outside of the complaint—including attachments to opposition briefs. *See Murphy v. Stocksdale*, No. 1:24-CV-00325-JRR, 2026 WL 468553, at *3 n.4 (D. Md. Feb. 19, 2026) (collecting citations).

file. Am. Compl. at 3. He does not allege facts showing that Defendant obtained the information through an employment-related medical examination or disability-related inquiry governed by 42 U.S.C. § 12112(d). *See Dillard*, 2024 WL 4544555, at *3. Nor does Plaintiff explain with any facts how Defendant failed to treat his medical information as confidential or used it in excess of its legal authority. Instead, Plaintiff merely alleges that Defendant "violated the ADA by disclosing confidential medical information." Am. Compl. at 4. That assertion is a legal conclusion unsupported by well-pleaded factual allegations. Because Plaintiff fails to plead sufficient facts to raise his right to relief under the ADA above the speculative level, Count IV must be dismissed.[6]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Request for Leave to Amend, ECF No. 10, is GRANTED pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), and Defendant's first Motion to Dismiss, ECF No. 8, is DENIED AS MOOT. Defendant's Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 11, is GRANTED pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff may file a motion for leave to file a second amended complaint.

The Court shall issue a separate Order consistent with this Memorandum Opinion.

November 16, 2026
Date

/S/
Matthew J. Maddox
United States District Judge

[6] Plaintiff's argument that discovery is necessary is unconvincing. *See* ECF No. 13 at 4. "The relevant inquiry on a motion to dismiss for failure to state a claim is limited to whether the complaint adequately states claims for which relief may be granted, not whether the claim can be proven. . . . [Federal Rule of Civil Procedure] 8 'does not unlock the doors of discovery for a plaintiff'–she must state a plausible claim for relief before she is entitled to discovery." *Anusie-Howard v. Bd. of Educ. of Baltimore Cnty.*, Civ. No. WDQ-12-0199, 2012 WL 1964097, at *3 (D. Md. May 30, 2012) (citing *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006), and then quoting *Iqbal*, 556 U.S. at 678–79).